## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ANITA HANEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil No. 08-2658 JAR** |
| ) | |
| **SHAUN DONOVAN, in his capacity** ) | |
| **as Secretary of the United States Department** ) | |
| **of Housing and Urban Development,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff Anita Haney brings this lawsuit against her former employer, the United States Department of Housing and Urban Development ("HUD"), alleging that she was discriminated against on the basis of her race, age, gender and disability, as well as retaliated against and subjected to retaliatory harassment and constructive discharge, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794a, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* This matter comes before the Court on defendant's Motion for Partial Dismissal or, in the Alternative, for Summary Judgment (Docs. 6, 9). For the reasons explained in detail below, the Court construes defendant's motion as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and dismisses certain of plaintiff's claims without prejudice.

## I.     Procedural Background

On December 23, 2008, plaintiff filed her Complaint against defendant for violations of Title VII, the ADEA, the Rehabilitation Act, and the ADA.  Count I of plaintiff's Complaint alleges defendant engaged in discriminatory conduct on the basis of race, age, gender, physical disability and failure to accommodate when it refused to consider her accommodation request to allow her to perform overnight travel.  Count II of plaintiff's complaint alleges defendant retaliated against her for requesting the reasonable accommodation by transferring her to a job with fewer duties and less prestige, then subjected her to retaliatory harassment and a hostile work environment leading to her constructive termination.

Defendant seeks partial dismissal of plaintiff's discrimination and retaliation claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, summary judgment pursuant to Rule 56, based on her failure to exhaust her administrative remedies under the negotiated grievance procedure before seeking relief in the district court.  Specifically, defendant moves to dismiss Count I, paragraphs 34-48, and Count II, paragraphs 50 and 51a., to the extent they allege discrimination based on plaintiff's race, age, gender, and physical disability and retaliation against her when she was reassigned because she requested reasonable accommodation.  Defendant contends that plaintiff's election to proceed under the negotiated grievance procedure on her discrimination and retaliation claims relating to reasonable accommodation and transfer bars her Equal Employment Opportunity ("EEO") complaint and thus this Court is without subject matter jurisdiction to address the merits of her EEO complaint with respect to these specific claims.  Defendant does not move to dismiss Haney's claim for retaliatory harassment, hostile work environment and constructive discharge.  Plaintiff responded

with an additional statement of facts and supporting evidence, and the parties proceeded by treating the motion as one for summary judgment.[1]

Review of the basis for defendant's motion, however, leads the Court to conclude this matter is more appropriately treated as one for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. In the Tenth Circuit, failure to exhaust administrative remedies is a jurisdictional bar to filing suit in federal court.[2] The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."[3] The Tenth Circuit has distinguished between a plaintiff's failure to exhaust administrative remedies, which creates a jurisdictional bar to suit, and plaintiff's failure to *timely* exhaust administrative remedies, which is an affirmative defense subject to equitable tolling.[4]

In this case, defendant alleges that plaintiff filed an internal grievance, but abandoned that procedure before completion of the process and subsequently raised the same claims in her EEO complaint. Defendant argues that because the election to proceed through the negotiated grievance procedure was irrevocable, and plaintiff effectively abandoned her grievance, plaintiff's claims were not exhausted and are thus subject to dismissal. Because plaintiff filed an EEO complaint that included these allegedly barred claims, defendant construes the exhaustion

_____

[1](Docs. 16,17.)

[2]*Jones v. Runyon,* 91 F.3d 1398, 1399 n.1 (10th Cir.1996).

[3]*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

[4]*Jones,* 91 F.3d at 1399 n.1 (noting that the Tenth Circuit's precedent was somewhat inconsistent, but concluding that, although timeliness is not jurisdictional, exhaustion is jurisdictional under Tenth Circuit law); *see also Low v. Chu,* Case No. 09-CV-0398-CVE-PJC, 2010 WL 503109, at *3 (N.D. Okla. Feb. 8, 2010) (noting that exhaustion is jurisdictional, but timely exhaustion is not jurisdictional and may be waived or tolled).

of administrative remedies as not jurisdictional in this case, and moves to dismiss certain claims

for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), or in the

alternative, a motion for summary judgment under Rule 56. In choosing this procedural route,

defendant cites to *Douglas v. Norton*,[5] wherein the Tenth Circuit held that because the plaintiff

"filed a complaint with the EEOC, albeit allegedly untimely," the proper analysis was under

Rule 12(b)(6), rather than Rule 12(b)(1).[6] Defendant extends that ruling to a case where the

plaintiff has made *any* sort of filing, whether timely or untimely. However, this Court finds

*Douglas* distinguishable because the Tenth Circuit based its decision on the timeliness of

Douglas's EEO filing, rather than on his failure to exhaust.[7]

Here, defendant has not argued that plaintiff's filings were untimely, but rather, that they

were unexhausted. The Tenth Circuit has consistently held that "exhaustion" of administrative

remedies is a jurisdictional prerequisite to suit.[8] Although failure to file any administrative

complaint or grievance is clearly jurisdictional, it would be inconsistent to conclude that the

mere filing of an administrative complaint is a jurisdictional prerequisite to suit.[9] Consistent

with Tenth Circuit precedent, an administrative filing, whether timely or not, which never

---

[5]167 F. App'x 167, 2006 WL 137403, *6 (10th Cir. Jan. 19, 2006).

[6]*Id.* (where plaintiff failed to exhaust administrative remedies under the negotiated grievance procedure, but also filed an untimely complaint with the EEOC, court held that the district court erred in dismissing the case for lack of jurisdiction under Rule 12(b)(1)).

[7]*See id.* at 711 ("While Douglas' actions from September 1999 through the arbitrator's decision may have constituted a good-faith effort to exhaust, especially considering the morass of statutes and regulations involved, such efforts do not excuse the six-month delay between the arbitrator's ruling and Douglas' consultation with an EEO counselor on Mary 23, 2001.").

[8]*See Sizova v. Nat'l Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).

[9]*See Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (explaining that, to determine if a plaintiff has exhausted his remedies with regard to a particular claim, the court must "liberally construe charges filed with the EEOC.").

reaches a final decision before plaintiff files suit in federal court, has not been "exhausted."[10]

When a plaintiff files an administrative complaint, but either abandons or withdraws her

complaint before it reaches a final decision, courts have treated it as a failure to exhaust

administrative remedies, denying the court subject matter jurisdiction over those claims.[11]  The

court must dismiss unexhausted claims; however, if a complaint asserts both exhausted and

unexhausted claims, the court may proceed to adjudicate the exhausted claims.[12]

A plaintiff is required to exhaust his or her administrative remedies before pursuing a

discrimination claim in federal court.[13]  As the Tenth Circuit has explained, "requiring

exhaustion of administrative remedies serves to put an employer on notice of a violation prior to

the commencement of judicial proceedings.  This in turn serves to facilitate internal resolution of

the issue rather than promoting costly and time-consuming litigation."[14]  In this case, defendant

---

[10]*See Jones v. Runyon*, 91 F.3d at 1399 n.1; *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317-18 (10th Cir. 2005) (holding that a failure to cooperate with the EEO investigation resulted in a failure to exhaust that should have been dismissed under Rule 12(b)(1)).

[11]*See Douglas v. Norton*, 167 F. App'x 698, 711 (10th Cir. 2006) ("[W]hen an employee . . . abandons his claim before an agency has reached a determination, he cannot be deemed to have exhausted his administrative remedies."); *Khader v. Aspin*, 1 F.3d 968, 970–71 (10th Cir. 1993) (holding that a person who abandons or withdraws their administrative complaint before a final determination is reached has failed to exhaust his or her administrative remedies, depriving the court of subject matter jurisdiction); *Pedersen v. W. Petroleum, Inc.*, Case No. 2:07-CV-997 TS, 2008 WL 977370, at *5 (D. Utah Apr. 9, 2008); *Farley v. Leavitt*, Case No. CIV 05-1219 JB/LFC, 2007 WL 6364841, *13 (D. N.M. Dec. 31, 2007) (applying Rule 12(b)(1) when plaintiff filed a grievance, but abandoned it in order to file an EEO complaint, thus, failing to exhaust her administrative remedies); *Taylor v. Dam*, 244 F. Supp. 2d 747, 758 (S.D. Tex. 2003) (holding that abandonment of the grievance procedure in order to file an EEO complaint resulted in a failure to exhaust administrative remedies, precluding judicial review); *Steward v. Summers*, Case No. Civ.A. 99-2993, 2000 WL 782075, at *5 (E.D. La. June 9, 2000).

[12]*McGarr v. Peters*, No. 07-1373, 2008 WL 2778831, at *2 (W.D. Okla. July 11, 2008) (citing *Jones*, 91 F.3d at 1399; *Jenkins v. Educ. Credit Mgmt. Corp*., No. 05-2007, 2007 WL 18919, at *3 (10th Cir. Jan. 4, 2007)).

[13]*See Jones v. United Parcel Serv., Inc.*, 502 F.3d at 1176 (exhaustion in ADA cases); *Khader*, 1 F.3d at 970 (exhaustion in Title VII cases); *Harms v. Internal Revenue Serv.*, 146 F. Supp. 2d 1128, 1133 (D. Kan. 2001) (exhaustion in Title VII and Rehabilitation Act cases); *Pedersen*, 2008 WL 977370, at * 4 (exhaustion in ADEA cases).

[14]*Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832–35 (1976)).

argues that plaintiff abandoned or withdrew her grievance, thus precluding review by the EEO and resulting in a failure to exhaust her administrative remedy before filing suit. Accordingly, the Court finds defendant's motion is appropriately considered under Rule 12(b)(1) for lack of subject matter jurisdiction.[15] This distinction is important, since a grant of summary judgment is a judgment on the merits of a case, but a jurisdictional inquiry is not related to the merits.[16] Moreover, as discussed below, plaintiff bears the burden of proving that this Court has subject matter jurisdiction over her complaint.

## II.   Rule 12(b)(1) Standards

Federal courts are courts of limited jurisdiction and, as such, must have a statutory or Constitutional basis to exercise jurisdiction.[17] A court lacking jurisdiction must dismiss the case, regardless of the stage of the proceeding, when it becomes apparent that jurisdiction is lacking.[18] The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper.[19] "Thus, plaintiff bears the burden of showing why the case should not be

---

[15]*See Harms,* 146 F. Supp. 2d at 1130–31; *Facha v. Cisneros*, 914 F. Supp. 1142, 1146 (E.D. Pa. 1996) (treating a motion for summary judgment as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1)); *Green v. United States*, Case No. 07-CV-0231-CVE-PJC, 2008 WL 508675, at *3 (N.D. Okla. Feb. 22, 2008); *see also Robinson v. Union Pac. R.R.*, 245 F.3d 1188, 1191 (10th Cir. 2001) (motion to dismiss for lack of subject matter jurisdiction must be brought under Rule 12(b)(1), not Rules 12(b)(6) or 56, except where resolution of jurisdictional question is intertwined with the merits of the case); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 518 n.8 (10th Cir. 1994) (noting that, unlike summary judgment, in a Rule 12(b)(1) motion, the *res judicata* effect is limited to the issue of jurisdiction and does not affect the merits of the claims).

[16]*See id.*

[17]*Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage,* 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1.") (internal citations omitted).

[18]*Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[19]*Montoya*, 296 F.3d at 955.

dismissed."[20] Mere conclusory allegations of jurisdiction are not enough.[21]

Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[22] "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."[23] On a factual attack, the court may consider evidence outside of the pleadings and may resolve factual disputes without converting the motion into a Rule 56 motion.[24] As the Sixth Circuit has explained,

> When facts presented to the district court give rise to a factual controversy, the district must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve

---

[20]*Harms*, 146 F. Supp. 2d at 1130.

[21]*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

[22]*Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

[23]*Holt*, 46 F.3d at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003).

[24]*Id*. at 1003 (the Tenth Circuit reviews the district court's findings of jurisdictional facts for clear error).

7

disputed jurisdictional facts.[25]

"A court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."[26]  In this case, the jurisdictional issue is not intertwined with the merits of the lawsuit, because the resolution of the jurisdictional issue does not require the Court to consider any aspect of plaintiff's substantive claims.  Exhaustion of administrative remedies is not an aspect of the merits of a discrimination claim.[27]  Thus, the Court proceeds to resolve defendant's motion to dismiss under Rule 12(b)(1). Because the parties proceeded under Rule 56, they have supplied the Court with evidence and affidavits to consider on the jurisdictional issue of exhaustion of administrative remedies.[28]

## III.    Factual Background

In 1989, Anita Haney began working for the HUD in Kansas City, Kansas in the agency's Enforcement Branch.  In February 2003, she was placed on a temporary detail to the Intake/Assessment Branch.

In 1998, HUD entered into an Agreement with the American Federation of Government Employees ("AFGE") AFL-CIO, which covered all bargaining unit employees.  The 1998 Agreement ("Agreement" or "Bargaining Agreement"), was set up under the Fair Service Labor-

---

[25]*Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.

[26]*Id.* (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 (10th Cir. 1987)).

[27]*Davis ex rel. Davis*, 343 F.3d at 1296 (quoting *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1325 (10th Cir. 2002)); *Farley v. Leavitt*, Case No. CIV 05-1219 JB/LFC, 2007 WL 6364329, at *5, *13 (D. N.M. Dec. 31, 2007).

[28]*See Ohio Nat'l Life Ins. Co.*, 922 F. 3d at 327 ("A district court certainly is under no obligation to hear oral testimony on a 12(b)(1) motion.").

Management Relations Statute.[29]  The Statute was designed to protect the rights of Federal

Government employees to participate in labor organizations and to bargain collectively so as to

"faciliat[e] and encourag[e] the amicable settlement[] of disputes between employees [of the

Federal Government] and their employers involving conditions of employment."[30]  The

Agreement provided procedures for the settlement of grievances brought by bargaining unit

employees.[31]  The Agreement states that it provides the "sole and exclusive procedure for the

resolution of grievances by employees in the bargaining unit," but "only to the extent of those

matters which are grievable and arbitrable under this negotiated Agreement."[32]

    A bargaining unit employee may grieve prohibited personnel practices, such as

discrimination based on race, color, religion, sex, national origin, age, handicapping condition,

marital status, or political affiliation, and "may raise the matter under a statutory procedure or

the grievance procedure, but not both."[33]  An employee is deemed to have exercised her "choice

to raise a matter under any applicable statutory procedure or the negotiated procedure when the

employee: "(1) timely files a notice of appeal under the applicable statutory procedure or elects

to use the statutory Equal Employment Opportunity complaint process (see Section 19.09 (2); or

---

[29]5 U.S.C. § 7101 *et seq.* (Title VII of the Civil Service Reform Act of 1978); (Doc. 7, Ex. A-1, Art. 2 § 2.01(12)).

[30]5 U.S.C. § 7101(a)(1)(C).

[31]The Bargaining Agreement specifically states that "bargaining unit employees" include "all eligible employees of the offices listed on the description of the consolidated unit which is attached as Appendix A." (Doc. 7 Ex. A-1, Art. 2 § 1.02.)  Neither plaintiff nor defendant have included Appendix A for the Court's review.

[32](Doc. 7, Ex. A-1, Art. 22 § 22.01.)

[33]*Id.* Art. 22 § 22.03.  This list of prohibited personnel practices is apparently illustrative, as the Agreement states that "a more complete definition of prohibited personnel practices" is provided in Article 4, Employee Rights/Standards of Conduct.  *Id.*  Neither party has furnished the Court with a copy of Article 4.

(2) timely files a grievance in writing (see Section 22.12), whichever occurs first."[34]

An employee exercises her option concerning EEO discrimination matters when she "timely files a grievance in writing or files a formal written complaint under the statutory EEO complaint procedure, whichever occurs first."[35] However, "[d]iscussions with an EEO Counselor in no way precludes the filing of a grievance that is otherwise timely."[36] Although an EEO Counselor is "responsible for informing the employee of his/her options in relation to alternative procedures," the Agreement states that "[t]he inadvertent failure of the Counselor to inform the employee of his/her options, in no way diminishes the employee's responsibility to make an election of procedures or extends the time limits for filing a grievance or a complaint."[37]

To elect the negotiated grievance procedure, an employee must file an Employee Grievance Form in writing. The negotiated grievance procedure includes a three-step process by which a bargaining unit employee may present and appeal her grievance with the help of a union representative. An employee initiates Step 1 by advising her immediate supervisor of the matter in writing on an Employee Grievance Form. The supervisor is required to respond in writing. If unsatisfied, the grievant may appeal to Step 2 before the management representative. A meeting may be arranged by telephone or video conferencing with deciding officials outside the area. Management shall provide a written response, stating their findings and action taken, if any, to settle the matter. If the matter is still not settled, the grievant may appeal the matter to the

---

[34]*Id*. Art. 22 § 22.04.

[35]*Id.*; (Doc. 16, Ex. 4, Art 19 § 19.09(2)).

[36](Doc. 7, Ex. A-1, Art. 22 § 22.04); (Doc. 16, Ex. 4, Art. 19 § 19.09(2).)

[37](Doc. 16, Ex. 4, Art. 19 § 19.09(2).)

designated Headquarters official in Step 3. A meeting may be held upon agreement of the parties, and a written decision will follow. If the matter is not resolved by the end of Step 3, the Union or Management representatives may refer the matter to arbitration.[38]

Marsha Lowe, Human Resources Specialist with HUD in Kansas City, Kansas, has worked in the HUD Office of Administration since July 1977. In a signed declaration, she stated that she is familiar with the 1998 HUD/AFGE Agreement, which sets up a negotiated grievance process for employees who are covered by the union contract. Lowe stated that plaintiff (formerly Anita Hawkins) was a bargaining unit employee, covered by the 1998 Agreement, during the time she worked for HUD. Plaintiff, on the other hand, insists that, after she was transferred to the Intake/Assessment branch, she was no longer a bargaining unit employee, but a "temporary employee."[39]

The circumstances surrounding plaintiff's 2003 transfer were as follows. In January 2003, plaintiff had been assigned to make a trip from Kansas City to St. Louis for business. Due to a condition affecting her back called lumbar spinal stenosis, at the L-5 S1 level, perineural fibroses of the lumbar spine, lumbar radiculopathy, and degenerative disc disease, plaintiff requested that her overnight accommodations include a special bed. On February 14, 2003, she was notified that, instead of traveling to St. Louis, she was being reassigned from the Enforcement Branch of the Office of Fair Housing and Equal Opportunity, to the

---

[38](Doc. 7, Ex. A-1, Art. 22 § 22.13.)

[39]Plaintiff cites to Exhibit 6, which appears to be a "Request for Personnel Action," to support the statement that she was "placed on a 30-day temporary assignment to the Intake Branch." However, Exhibit 6 indicates that plaintiff's transfer to the Intake/Assessment Branch was a "detail" intended to last "120 days." There is no indication that plaintiff's work at the Intake/Assessment Branch made her an "employee[] with [a] temporary appointment[]" within the meaning of the Bargaining Agreement exclusion provided in § 22.05(12).

Intake/Assessment Branch, effective February 18. Plaintiff believed this reassignment was a retaliatory response to her request for an accommodation of her disability.

On February 25, 2003, plaintiff contacted an EEO Counselor. The next day, February 26, plaintiff took Step 1 of the internal grievance procedure by submitting an HUD Form 25018 Employee Grievance. In her Step 1 grievance, plaintiff stated that on January 22, 2003, she made a request for a reasonable accommodation of her disability, and she explained how she was immediately reassigned to the Intake/Assessment Branch. In her grievance, she also mentioned the ADA, Section 503 of the Rehabilitation Act of 1973, and the ADEA.

On March 7, 2003, plaintiff filed a Step 2 Grievance, and informed management via email that she wanted to have an attorney represent her. In response to her email, Marsha Lowe informed plaintiff that she would only be permitted to have a union representative at this stage. Proceeding with Step 2 on March 12, 2007, plaintiff met with management and her union representative, Michael Kane.[40] Before a written decision was issued at the conclusion of Step 2, plaintiff notified management, on March 20, 2003, that she did not intend to pursue her grievance any further but intended to pursue the matter with an attorney through the EEO complaint process.[41]

---

[40]Plaintiff attaches Exhibit 18, which she refers to in her Statement of Facts as a "Final Interview Form for Informal Complaint." (Doc. 16 at 6.) It is dated March 13, 2003. Therefore, the Informal Complaint was completed after she filed her Step 1 grievance on February 26.

In the Informal Complaint, she identified herself as a "non-bargaining employee." (Doc. 16, Ex. 18 at 2, ¶ 15.) However, there is no evidence to support this conclusion. Plaintiff has not provided the Court with sections of the Bargaining Agreement relating to "temporary appointments." Furthermore, it is worth noting that plaintiff admitted in her Informal Complaint that she already filed a grievance "on the same issue."

[41]Plaintiff objects to the use of the term "withdraw" to describe the outcome of her union grievance. Plaintiff chose not to pursue the union grievance to completion, thus, her chosen administrative remedy was never exhausted. Furthermore, plaintiff's attorney previously argued that plaintiff should be allowed to proceed with her claims under the EEO because she "withdrew her grievance" from the negotiated grievance procedure. (Doc. 17, Ex. AA-1, at 1.)

On April 4, 2003, plaintiff filed a formal complaint with the HUD office of EEO. In her complaint, plaintiff set forth three allegations, and specified that she believed she was discrimination against on the basis of race, sex, age, handicap, and reprisal, "[b]eginning in Jan. 2003 and continuing to the present."[42] In Allegation I, plaintiff stated that she made a request for a reasonable accommodation of her disability in January 2003, and was reassigned to a new branch on February 14, 2003. She claimed that management's failure to accommodate her was disability discrimination and management's decision to transfer her without explanation was retaliatory. In Allegation II, she explained that she was replaced by a younger, white, non-disabled, male. Thus, she believed her reassignment was discrimination on the basis of race (black), sex (female), disability (back), age (56), and/or retaliation because of her accommodation request. In Allegation III, plaintiff stated that, after she was assigned to the Intake/Assessment Branch, she was harassed, retaliated against, and discriminated against on the basis of her disability and age. She explained that less experienced staff members were required to monitor her work, her supervisor criticized her work in the presence of other staff, and her supervisors sent less experienced staff to observe her presentations. She claimed this scrutiny created a hostile work environment causing her to suffer ostracization, humiliation, depression, anxiety, and forced her into an early retirement.[43]

On August 1, 2003, Peggy Armstrong, Director of the EEO Division, wrote plaintiff's

---

[42](Doc. 7, Ex. B-1.)

[43](Doc. 16, Ex. 1 at 3.) Plaintiff apparently amended her EEO Complaint on April 9 and June 12 to include Allegation III, which the EEO understood related to harassment *after* February 14, 2003 in the following forms: (1) management's questions about plaintiff's doctor's orders; (2) threats of disciplinary action and termination if plaintiff did not return to work; (3) plaintiff's placement on AWOL; and (4) plaintiff's allegations that she was forced to retire on May 1, 2002. (Doc. 7, Ex. B-2 at 1.) Plaintiff objects to the way the EEO characterized her Allegation III claims. (Doc. 16 at 13.) Nevertheless, even though the EEO declined to investigate the February 14, 2003 reassignment, it accepted Allegation III for investigation.

attorney to inform her that the EEO was accepting part of plaintiff's claims for investigation, identified as: Issue 1–whether she was discriminated against because of her race, age, sex, physical disability, and retaliated against because she requested a reasonable accommodation; and Issue 2–whether she was harassed since February 14, 2003.[44] The letter explained that, pursuant to 29 C.F.R. § 1614.107(a)(4), the EEO would not investigate plaintiff's claims that "she was discriminated against **on** February 14, 2003, when she was detailed from the Enforcement Branch to the Intake/Assessment Branch of Fair Housing and Equal Opportunity after submitting a reasonable accommodation request form" because a grievance had already been filed on this matter under HUD's negotiated grievance procedures.[45]

On August 7, 2003, plaintiff's counsel sent a letter requesting that the EEO reinstate plaintiff's rejected claims because she contacted an EEO Counselor prior to filing her Step 1 grievance. In a letter dated November 28, 2003, the EEO responded that, per 29 C.F.R. § 1614.301(a), a person covered by a collective bargaining agreement may not simultaneously pursue a grievance through the negotiated grievance procedure and the EEO. The letter explained that an election of procedures is made when the person files a written complaint, and the EEO is barred from investigating matters previously raised through the negotiated grievance procedure. Because plaintiff filed a written grievance on February 26, 2003, which pre-dated her EEO Complaint, any claims that were the same were dismissed.

Thereafter, the EEO Investigator collected affidavits from eleven individuals. Each witness was informed that the claims under investigation were:

---

[44](Doc. 7, Ex. B-2 at 1.)

[45]*Id.* (emphasis added).

1.  Whether your client [Anita Hawkins] was discriminated against because of her race (Black), age (DOB: 10/4/46), sex (female), physical disability (Lumbar spinal perineural fibrosis of the spine), lumbar radiculopathy and degenerative disc disease) and retaliated against because she requested a reasonable accommodation.

2.  Whether your client was harassed since February 14, 2003 when:
> a.  the Deputy Director for Fair Housing and the Equal Opportunity questioned your client's doctors orders;
> b.  she was threatened with disciplinary action and termination if she did not return to work against her doctor's order;
> c.  she was placed on AWOL; and
> d.  she was forced to retire on May 1, 2003.[46]

Witnesses answered questions about both matters. On September 30, 2005, EEO Deputy Director Linda Bradford Washington issued a final decision wherein she noted that, although much of the evidence gathered by the EEO Investigator related to Issue 1, the EEO had already dismissed Issue 1 because plaintiff previously filed a grievance on this matter in the negotiated grievance procedure. In addition, Washington stated that any evidence relating to Issue 1 would not be considered for purposes of her decision on Issue 2.[47] Washington then proceeded to

---

[46](Doc. 16, Exs. 7–17.)

[47](Doc. 17, Ex. AA-2 at 1-2; Doc. 7, Ex. C at 1-2; Doc. 17, Ex. AA-1 at 1-2.) Plaintiff objects to how the EEO characterized her Issue 2 claims, but the Court notes that the EEO summary was consistent with plaintiff's EEO Affidavit. (Doc. 16, Ex. 10 at 10–11.)

The EEO ultimately made it very clear that it was not considering Issue I. At the end of the EEO Final Decision, Deputy Director Linda Bradford Washington added,

> Finally, it must be noted that much of the evidence provided by the investigation is directly related to the allegation that your client was discriminated against because of her race, sex, age, and physical disability and that she was retaliated against because she requested a reasonable accommodation. This issue, as noted above, was not accepted because your client had previously filed a grievance under the Department's Negotiated Grievance procedures raising these same claims. The decision to dismiss that allegations, which was stated in the Department's letters of August 1 and November 28, 2003, is reaffirmed for the reasons stated in those letters. That evidence, therefore, had not been considered for the purposes of this decision.

analyze plaintiff's Issue 2 claim and concluded that plaintiff had not met her burden to show that harassment or discrimination had occurred.

Although the parties did not consider it necessary to provide this Court with a complete history of all appeals and motions for reconsideration pursued in this matter relating to the dismissal of Issue I, they appear to be extensive. On August 7, 2007, the Administrative Judge of the EEOC ruled that Issue I was appropriately dismissed, and granted the Agency's motion for a protective order, precluding further questioning about matters relating to the February 14, 2003 transfer.[48] Plaintiff has now filed a Complaint in this District Court, which includes, among other claims, plaintiff's discrimination and retaliation claims relating to the request for accommodation and subsequent February 2003 transfer. Defendant argues that, because plaintiff failed to fully exhaust her administrative remedies, this Court lacks subject matter jurisdiction to hear her claims relating to the 2003 accommodation request and February transfer.

## IV.    Statutory Framework – Election of Remedies

The Civil Service Reform Act of 1978 ("CSRA"),[49] was passed by Congress to ensure that labor unions and federal employers included within their collectively bargaining agreements procedures for settling grievances.[50] The statute defines "grievance" to include "any complaint–(A) by any employee concerning any matter relating to the employment of the employee; or . . . (C) by any employee . . . concerning–(i) the effect or interpretation, or a claim

---

(Doc. 17, Ex. AA-2 at 10.)

[48](Doc. 7, Ex. C.)

[49]Pub. L. No. 95-454 Stat. 1111 (Oct. 13, 1978).

[50]*Fernandez v. Chertoff*, 471 F.3d 45 (2d Cir. 2006).

of breach, of a collective bargaining agreement; or (ii) any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment."[51] With a few statutory exceptions, the procedures designated in the collective bargaining agreement "shall be the exclusive administrative procedures for resolving grievances which fall within [the agreement's] coverage."[52] There is an exception to this general rule in 5 U.S.C. § 7121(d), which states:

> An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.

Section 2302(b)(1) of Title 5 prohibits discrimination based on race, color, religion, sex, national origin, age, or handicapping condition in certain personnel actions, including an appointment, a promotion, a detail, transfer, or reassignment, a reinstatement, a decision concerning pay or benefits and "any other significant change in duties, responsibilities, or working conditions."[53] "Therefore, an employee who alleges [she is the victim of discrimination] may elect to proceed under either the negotiated grievance procedure or the statutory procedure, but not both. Once an employee elects a certain procedure, it is irrevocable and the employee must exhaust the remedies provided by that procedure."[54] The statute provides in full:

> An aggrieved employee affected by a prohibited personnel practice

---

[51]5 U.S.C. § 7103(9).

[52]5 U.S.C. § 7121(a)(1).

[53]5 U.S.C. § 2302(a)(2)(A), (b)(1).

[54]*Douglas v. Norton*, 167 F. App'x 698, 707 (10th Cir. 2006) (citing *Johnson v. Peterson*, 996 F.2d 397, 399 (D.C. Cir. 1993); *Vinieratos v. United States*, 939 F.2d 762, 768–69, 772 (9th Cir. 1991); *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989)); 5 U.S.C. § 7121(d).

under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both. An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first. Selection of the negotiated procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the final decision pursuant to section 7702 of this title in the case of any personnel action that could have been appealed to the Board, or, where applicable, to request the Equal Employment Opportunity Commission to review a final decision in any other matter involving a complaint of discrimination of the type prohibited by any law administered by the Equal Employment Opportunity Commission.[55]

The EEOC's regulations provide that,

When a person is employed by an agency subject of 5 U.S.C. § 7121(d) and is covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination *must elect* to raise the matter under either part 1614 or the negotiated grievance procedure, *but not both*. An election to proceed under this part is indicated *only* by the filing of a written complaint; use of the pre-complaint process as described in § 1614.105 does not constitute an election for purposes of this section.[56]

Once a complainant has files a written complaint, her election is irrevocable and she is prohibited from thereafter filing a written complaint in an alternative procedure[57]:

An aggrieved employee who files a grievance with an agency

---

[55]5 U.S.C. § 7121(d).

[56]29 C.F.R. § 1614.301(a) (emphasis added).

[57]*Douglas*, 167 F. App'x at 707; *Vinieratos*, 939 F.2d at 767–68.

whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 irrespective of whether the agency has informed the individual of the need to elect or of whether the grievance has raised an issue of discrimination.[58]

The term "matter" refers to the conduct underlying the employee's claim, rather than the legal allegations in the claim itself.[59]

However, "[w]hen a person is *not* covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, allegations of discrimination shall be processed as complaints under this part."[60]

## V.    Discussion

To avoid the strict application 5 U.S.C. § 7121(d), plaintiff makes numerous arguments. First, plaintiff argues she should not be bound to her unexhausted grievance because neither she nor her claims were covered by the Bargaining Agreement. Next, she argues that her EEO complaint, although filed after the grievance, did not cover the same matters raised in her grievance, and thus, should have been allowed to proceed through the EEO process. Finally, she argues that the claims arising out of her 2003 transfer should be permitted in this case as background evidence of defendant's discriminatory intent, or, at the very least, the Court should give her equitable relief from the confusing administrative process by allowing her to be heard in this Court on those claims. The Court addresses each in turn.

---

[58]29 C.F.R. § 1614.301(a).

[59]*Farley v. Leavitt*, Case No. CIV 05-1219 JB/LFC, 2007 WL 6364841, at *9 (D.N.M. Dec. 31, 2007) (citing *Wright v. Snow*, No. 02 Civ. 7615(TPG), 2004 WL 1907687, at *5 (S.D.N.Y. Aug. 25, 2004); *Guerra v. Cuomo*, 176 F.3d 547, 550–51 (D.C. Cir. 1999); *O'Dwyer v. Snow*, No. 00 Civ. 8918, 2004 WL 444534, at *9 (S.D.N.Y. March 10, 2004)).

[60]29 C.F.R. § 1614.301(b) (emphasis added).

## A.     Scope of the Bargaining Agreement

Plaintiff makes various attempts to argue that she is not covered by the Bargaining Agreement.  She argues that: (1) she is not a bargaining unit employee; (2) the Bargaining Agreement only resolves discrimination claims, not retaliation claims; (3) she "raised" her grievance with the EEO Counselor first, and therefore was precluded from bringing a grievance in the negotiated grievance procedure; (4) she was a temporary employee, specifically excluded from coverage under the Agreement; and (5) she was grieving the classification of her work, a matter specifically excluded by the Agreement.

The Agreement excludes the following matters from the negotiated grievance procedure:

> (5) The classification of any position which does not result in the reduction in grade or pay of an employee; . . .
> (7) Matters already filed with the Equal Employment Opportunity Commission concerning discrimination complaints which are, therefore, statutorily precluded from duplicate filing under this procedure or raised under the Department's statutory Equal Employment Opportunity complaint resolution process; [and] . . .
> (12) Complaints by employees with temporary appointments not to exceed six (6) months.[61]

Plaintiff alleges she falls within all three of the above-listed exclusions, but neglects to provide the Court with a copy of the sections of the Agreement where these exclusions are defined.[62]  In essence, plaintiff is alleging that her grievance was ungrievable; and therefore, her election of the negotiated grievance procedure was a nullity and could not bind her.

Section 22.14 specifically states that "[e]ither party having objection to the appropriateness of a matter for consideration under the grievance procedure shall make the

---

[61](Doc. 7, Ex. A-1, Art. 22 § 22.05(5), (7), (12).)

[62](Doc. 7, Ex. A-1, Table of Contents).  Article 9 discusses "Position Classification" and Article 47 discusses "Temporary Employees."  The Court was not provided a copy of either Article 9 or Article 47.

matter known prior to or at Step 3 of this procedure. . . . Such objection shall state the specific grounds as to why the matter is not grievable."  With two very narrow exceptions, which do not apply to the present case, "[f]ailure to raise the question at this point shall preclude raising the issue at a later time."  In this case, however, plaintiff never raised any objections to the appropriateness of her grievance.  Immediately following Step 2, plaintiff informed management that she did not intend to pursue her grievance any further.  She did not present or discuss whether her complaint was grievable.  If she had, questions of grievability would have been decided "in one (1) or more of the decisions issued at the various steps of the grievance procedure."  Nevertheless, the Court addresses each of plaintiff's arguments in turn, in light of the evidence she has provided.

### 1.  Non-Bargaining Unit Employee

Plaintiff argues that she is not a bargaining unit employee.  However, in a sworn affidavit, the Human Resource Specialist stated that plaintiff was a bargaining unit employee during the time she was employed by HUD.  The only evidence plaintiff offers to controvert this statement, is an EEO counseling document prepared *by plaintiff* in which she identified herself as a "non-bargaining" employee.  The Tenth Circuit, however, has held that a federal employee, who fails to demonstrate any competence to testify about specialized personnel issues, cannot create a genuine issue of material fact with her own opinions on those issues.[63]

The Court notes that, after meeting with an EEO Counselor, plaintiff voluntarily filed her first formal complaint through the negotiated grievance procedure.  If she was genuinely concerned she was not a bargaining employee, she never raised this concern during Step 1 or

---

[63]*Fierro v. Norton*, 152 F. App'x 725, 729 (10th Cir. 2005).

Step 2, nor at the time she suspended/withdrew her negotiated greivance.  In addition, her Union Representative Michael Kane, never advised her that she was not covered by the Agreement. Rather, plaintiff has placed before the Court a Standard Form 52, entitled "Request for Personnel Action," which compares her position in the Enforcement Branch with her position in the Intake/Assessment Branch.  The form includes a box for "Bargaining Unit Status."  The box includes the number 0015.[64]  Plaintiff gives this Court no explanation.

The burden is with plaintiff to show subject matter jurisdiction.  When the factual basis for jurisdiction is challenged, plaintiff cannot create it through allegations having no evidentiary support.  Here, plaintiff attempted to re-characterize her relationship with the bargaining unit. The Court notes that she never raised this concern through the grievance procedure when she filed her grievance, or made this argument to the EEO at the time she filed her EEO Complaint. Therefore, without more, the Court finds that the evidence supports the conclusion that plaintiff was a bargaining unit employee at the time she filed her grievance.

---

[64](Doc. 16, Ex. 6, at 1, box 37.)

## 2. Retaliation Claims Not Covered

Next, plaintiff argues that the Agreement only covers complaints regarding discrimination, not retaliation, and her complaint was a retaliation claim, thus excluded under the Bargaining Agreement. Plaintiff cites to Article 19, which does not relate to grievances, but to EEO complaints. In addition, Article 19 expressly prohibits retaliation, stating, "Employees who allege discrimination or anyone who participates in the presentation of such complaints, such as the collateral duty EEO Counselor, shall be free from restraint, interference, coercion, discrimination, or reprisal."[65] Furthermore, Article 22, which relates to the negotiated grievance procedure, similarly provides that "[t]he filing of a grievance shall not be construed as reflecting unfavorably on an employee's good standing, performance, loyalty, or desirability to the Department."[66]

Plaintiff has not cited to any cases in which retaliation complaints are treated differently than discrimination complaints under a collective bargaining agreement. Upon the Court's own review, courts have treated 5 U.S.C. § 7121(d) as covering retaliation claims as well as discrimination claims.[67] Therefore, plaintiff's argument is without merit.[68]

---

[65](Doc. 16, Ex 4, Art. 19 § 19.01.)

[66](Doc. 7, Ex. A-1, Art. 22 § 22.09.)

[67]*See Brucks v. O'Neill*, 184 F. Supp. 2d 1103, 1115–16 (D. Kan. 2001) (holding that, because retaliation claim reached a settlement in the grievance procedure, it could not be brought under Title VII); *see also Taylor v. Dam*, 244 F. Supp. 2d 747 (S.D. Tex. 2003) ("Although she could have raised her allegations of race discrimination and retaliation in the grievance process and obtained full relief, she opted not to do so. Hence, in light of Taylor's failure to exhaust the administrative remedy she initially selected–the contractual grievance procedure–her present action is barred from consideration by this court and must be dismissed for lack of jurisdiction.").

[68]The Court notes that both parties have asked this Court to decide an issue of subject matter jurisdiction, but have chosen to provide very limited excerpts from the Bargaining Agreement. Although the Court is forced to analyze the parties' statements on the basis of an incomplete copy of the Bargaining Agreement, the sections cited by plaintiff not only fail to support her arguments, but directly contradict them.

### 3.    Claim "Raised" with EEO Counselor First

Plaintiff argues that she first "raised" her grievance with the EEO Counselor and therefore made her election to proceed with the EEO process.  Plaintiff cites Section 22.05, which excludes from the negotiated procedure any matter "already filed" with the EEOC or already "raised" under the Department's statutory EEO complaint resolution process.[69] However, to properly construe this exclusion, the Court must also read Article 19, which lays out the EEO complaint process.  Under Article 19, employees can "opt to have their complaints resolved by either of the following, but not both, procedures: (1) The negotiated grievance procedure as provided in this Agreement; or (2) The statutory appeal process which begins with the engaging of an EEO Counselor *and*, if the matter is not resolved, *the filing of a formal EEO complaint* with the Director of EEO for investigation and disposition."[70]  Although an employee may choose to engage an EEO Counselor, Section 19.09 specifically states that she is not deemed to have made a formal election until "such time as he/she timely files a grievance in writing or files a formal written complaint under the statutory EEO complaint procedure, whichever comes first."[71]  This is consistent 29 C.F.R. §1614.301(a), which states that "[a]n election to proceed [with the statutory EEO procedure] is indicated only by the filing of a written complaint."  Plaintiff does not dispute that she filed Step 1 grievance on February 26, 2003, and filed her formal EEO Complaint on April 4, 2003.  Thus, plaintiff's election was clear and this

---

[69](Doc. 7, Ex. A-1, Art. 22 § 22.04.)

[70](Doc. 16, Ex. 4, Art. 19 § 19.09)(emphasis added).

[71]*Id.*

part of her argument is, therefore, without merit.[72]

Plaintiff notes, however, than an EEO Counselor should advise a complainant that her options are mutually exclusive. She claims she was not given such advice. Under the Agreement, the EEO Counselor is directed to advise the employee of her "options in relation to alternative procedures."[73] However, the Agreement also states that any failure on the part of the Counselor to give such advice "in no way diminishes the employee's responsibility to make an election of procedures."[74] Article 19 also states that "[d]iscussions with an EEO Counselor in no way preclude the filing of a grievance that is otherwise timely."[75] This is supported by 29 C.F.R. § 1614.301(a), which provides:

> An aggrieved employee who files a grievance with an agency whose negotiated agreement permits the acceptance of grievances which allege discrimination may not thereafter file a complaint on the same matter under this part 1614 *irrespective of whether the agency has informed the individual of the need to elect . . .*[76]

Because the Bargaining Agreement is consistent with the Federal Regulations applicable in this case, the Court cannot conclude otherwise. Plaintiff did not elect the EEO procedure when she contacted the EEO Counselor, and the filing of her grievance was an irrevocable election of remedies.

---

[72]*See Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (summarily dismissing a similar argument raised by a plaintiff).

[73](Doc. 16, Ex. 4, Art. 19 § 19.09.)

[74]*Id.*

[75]*Id.*

[76]29 C.F.R. 1614.301(a) (emphasis added); *Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006).

### 4. Plaintiff as a "Temporary Appointment"

Plaintiff claims that, as part of the Intake/Assessment Branch, she was a "temporary appointment" under the meaning of a the Bargaining Agreement, and therefore excluded from coverage. Plaintiff attaches eleven affidavits gathered by the EEO Investigator, wherein three witnesses referred to plaintiff's transfer from the Enforcement Branch to the Intake/Assessment Branch as a "temporary assignment"[77] or a "30-day detail."[78] However, plaintiff quotes this testimony out of context. None of the witnesses were testifying to whether plaintiff fell under the "temporary appointment" exception in the Bargaining Agreement. Indeed, the witnesses were never asked to discuss the Bargaining Agreement.

Plaintiff, therefore, has produced no evidence showing that a change in her work constituted a "temporary appointment" as defined by the Bargaining Agreement. In fact, plaintiff has not even provided the Court with a copy of the Bargaining Agreement that defines temporary employees generally.[79] Rather, the Court notes that plaintiff worked for HUD since 1989, making her employment anything but "temporary." Martha Lowe, the Human Resource Specialist and person most qualified to discuss the Bargaining Agreement, has testified that plaintiff was a bargaining unit employee under the Agreement.[80] Because plaintiff has failed to produce any evidence to the contrary, the Court finds that she did not fall within this exclusion.

---

[77](Doc. 16, Ex. 7 at 6, Ex. 8 at 4, Ex. 9 at 5.)

[78](Doc. 16, Ex. 8 at 3.)

[79](Doc. 7, Ex. A-1, Art. 47 "Temporary Employees.")

[80](Doc. 16, Ex. 17 at 5.)

### 5.      Grieving the Classification of Her Work

Finally, plaintiff argues that her grievance was ungrievable because she was grieving the classification of her work.  The Bargaining Agreement expressly excludes complaints about the classification of any position that does not result in a reduction in grade or pay.[81]  Plaintiff has provided a single document demonstrating that her pay and her grade remained the same after her transfer.  However, her grievance and her EEO Complaint never mentioned her classification specifically.  Rather, they emphasized the fact that she was placed in a position with new responsibilities and a new location.  In her Complaint before this Court, she states that her new position "was entirely different and carried reduced duties."[82]  Plaintiff has not furnished the Court with any provisions from the Collective Bargaining Agreement relating to the classification exclusion.  The Court cannot assume, without some evidentiary support, that the classification exclusion in the Bargaining Agreement applied to plaintiff, while on her assigned temporary work detail.  Because all evidence indicates that plaintiff was not merely grieving her classification, the Court finds that she did not fall within this exclusion.

In summary, plaintiff argues that her grievance was ungrievable and any attempt on her part to proceed through the negotiated grievance procedure was a "non-decision."  Thus, plaintiff argues, she should have been allowed to proceed through the EEO and into federal district court.  In support of this argument, she refers the Court to *Douglas v. Norton*[83] and *Chai v. Goldin*.[84]

---

[81](Doc. 7, Ex. A-1, Art. 22 § 22.05(5).)

[82](Doc. 1 at 4.)

[83]167 F. App'x 698 (10th Cir. 2006).

[84]No. 05970016, 1998 WL 422036 (E.E.O.C. July 10, 1998).

However, *Douglas* is distinguishable in multiple respects.  In *Douglas*, the complainant was specifically grieving his classification as a GS-13, which was specifically excluded under the bargaining agreement.[85]  Here, plaintiff has never specifically stated that she is grieving her classification.  Furthermore, the complainant in *Douglas* was advised on multiple occasions that his grievance was ungrievable through the negotiated grievance procedure.[86]  Similarly, in *Chai*, the arbitrator informed the employee his grievance was ungrievable, and the EEOC concluded that the employee should be allowed to proceed through the EEO because his previous election was not a true election.[87]  In *Douglas*, however, the Tenth Circuit did not decide this issue, because the employee's decision to contact an EEO Counselor was so belated that his claim was time-barred.[88]

In contrast, plaintiff was never told that her grievance was ungrievable.  In fact, although she had the option to question the grievability of her claims at any time before Step 3, she did not do so.[89]  Rather, at the time she withdrew her grievance, she stated she was doing so in order to pursue her claim through the EEO.  If courts were to allow plaintiffs to revoke their election and

---

[85]*Douglas*, 167 F. App'x at 707-08.

[86]*Id.*

[87]*Chai*, 1998 WL 422036 at *2–3.

[88]*Douglas,* 167 F. App'x at 709 ("We need not decide whether Douglas' election of the grievance procedure was a nullity. . . . Even assuming we disregarding Douglas' 'election' of the grievance procedure, . . . we still conclude Douglas failed to timely exhaust his administrative remedies.").

[89](Doc. 7, Ex. A-1, Art. 22 § 22.14) ("Either party having objection to the appropriateness of a matter for consideration under the grievance procedure shall make the matter known prior to or at Step 3 of this procedure. Grievability/arbitrability determinations shall be contained in one (1) or more of the decisions issued at the various steps of the grievance procedure.  Such determinations shall not be issued by the grievance control officer.  Such objection shall state the specific grounds as to why the matter is not grievable.  Failure to raise the question at this point shall preclude raising the issue at a later time, unless; (1) The question of arbitrability is generated by an occurrence happening after Step 3; or (2) The failure to give notification is due to an act or omission on the part of the other party.").

proceed through the EEO every time they express a personal belief that their grievance is ungrievable, the federal regulations that make these procedures mutually exclusive and make election of remedies irrevocable would be unenforceable.[90] Unless plaintiff can prove that her grievance was ungrievable, this Court is no position to make such an assumption.

Proving jurisdiction is the plaintiff's burden. However, plaintiff has not supplied this Court with any evidence in support of her allegations that her grievance was ungrievable, or that she was not covered by the Bargaining Agreement, or that her grievance was excluded from the Agreement. She had the opportunity to raise these concerns with the decision-makers in the negotiated grievance process, but never did so. This Court is not in a position to assume her unsupported allegations are true, or assume that jurisdiction is proper. Plaintiff has not met her burden of proof in this case. Therefore, the Court finds dismissal is appropriate as this matter was not exhausted through the administrative process.

**B.      Whether Grievance and EEO Complaint Raised the "Same Matter"**

Alternatively, plaintiff argues that her grievance presented a claim for retaliation based on the 2003 transfer, but her EEO Complaint presented a claim for discrimination based on the 2003 transfer. Thus, she argues, they were not the "same matter" and the EEO should not have dismissed her claims based on the 2003 transfer. In addition, plaintiff argues that any events that preceded her February 2003 transfer or immediately followed her 2003 transfer should not be dismissed—leaving only paragraphs 42(d) and 51(a) of her Complaint involving the actual event of transfer subject to defendant's motion. Defendant counters that all evidence to which plaintiff even alluded in her Step 1 and Step 2 grievances, including the nature of her disability, her

---

[90]*See Vinieratos v. United States*, 939 F.2d 762, 772 (9th Cir. 1991).

request for an accommodation, and her subsequent reassignment, should be dismissed.

Section 7121(d) of Title 2 of the United States Code, in relevant part, provides: "An aggrieved employee affected by a prohibited personnel practice under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise *the matter* under a statutory procedure or the negotiated procedure, but not both."[91]  Under Tenth Circuit precedent, "matter" is interpreted to mean "the underlying government action which precipitated the complaint."[92]  Thus, plaintiff's attempt to clothe the same event in a new legal theory "does not insulate [her] from the operation of § 7121(d)."[93]

The Court has reviewed plaintiff's grievance, filed in the negotiated grievance procedure, her EEO Complaint, as well has her Complaint filed with this Court.  Her grievance and part of her EEO Complaint that was dismissed by the EEO covered the same matter:  allegations that her February 2003 detail/assignment/transfer was a discriminatory and/or retaliatory response to her request for an accommodation.  Moreover, the fact that plaintiff advanced different legal theories of race and sex discrimination in support of her allegations concerning her request for reasonable accommodation and her reassignment, does not protect her from the operation of § 7121(d), and these claims were properly rejected by the EEO.  To the extent plaintiff's claims of discrimination and retaliation before this Court focus on defendant's action involving her request for accommodation in January 2003 and her subsequent transfer to Intake/Assessment in

---

[91]5 U.S.C. § 7121(d) (emphasis added).

[92]*Giove v. U.S. Dep't of Transp.*, 178 F. App'x 814, 818 (10th Cir. 2006) (citing *Bonner v. Merit Sys. Protection Bd.*, 781 F.2d 202, 204–05 (Fed. Cir. 1986)).

[93]*Id.* ("The fact that Mr. Giove advanced a different legal theory in his EEO complaint from the one relied upon in his grievance does not insulate him from the operation of § 7121(d).").

February 2003, her claims have not been exhausted, and this Court is without jurisdiction to hear them.

The EEOC's regulations prohibit a complainant from pursuing the same matter through the EEO process and the negotiated grievance procedure.[94]  If a complainant files an administrative complaint with an agency, he may not subsequently file a grievance on the same matter with a union, and a complainant who files a grievance with a union may not subsequently file a formal complaint on the same matter with an agency.[95]  The regulations do not discuss what happens when a grievance is withdrawn; it "speaks solely in terms of the filing of grievances, regardless of what happens thereafter."[96]  The law, however, is clear in that "[o]nce an employee elects a certain procedure, it is *irrevocable* and the employee must exhaust the remedies provided by that procedure."[97]  If an election of remedies is "irrevocable," then a decision to "withdraw" a grievance cannot nullify the employee's election.[98]

Unfortunately, plaintiff has not had a full hearing on the discrimination she believes took place when she was transferred to the Intake/Assessment Branch in February 2003.  She withdrew her grievance from the negotiated grievance procedure before the appellate process

---

[94]29 C.F.R. § 1614.301(a).

[95]29 C.F.R. § 1614.301(a); *Wright v. Snow*, Case No. 03-1692(RBW), 2006 WL 1663490, *6 (D.D.C. June 14, 2006).

[96]*Wright,* 2006 WL 1663490, at *6 (holding that, when plaintiff's union representative filed a union grievance, it was an irrevocable election of procedures; and plaintiff's subsequent decision to withdraw the grievance and file an administrative complaint was not permitted under 29 C.F.R. § 1614.301(a)).

[97]*Douglas v. Norton*, 167 F. App'x 698, 707 (10th Cir. 2006) (citing *Johnson v. Peterson*, 996 F.2d 397, 399 (D.C. Cir. 1993)) (emphasis added); *Vinieratos v. United States*, 939 F.2d 762, 768–69, 772 (9th Cir. 1991); *Smith v. Kaldor*, 869 F.2d 999, 1005 (6th Cir. 1989).

[98]*See Wright*, 2006 WL 1663490, *7 ("It seems clear that the regulation is designed to prevent forum shopping, and this Court finds no reason to allow access to a second forum after proceedings were initiated earlier on the complainant's behalf in the alternative forum.").

had reached a final decision. She states that she did this, in part, because she sought the assistance of legal counsel. Having secured an attorney, plaintiff should have been counseled on whether to appeal her grievance through the negotiated grievance procedure so that, once a final decision was reached, it could be appealed through the appropriate statutory procedure.[99] Having failed to follow her grievance through to a final decision in the negotiated grievance process, however, plaintiff was barred from presenting her claim on the same matter to the EEO. Thus, having failed to exhaust her administrative remedies, this Court is without jurisdiction to hear her claims based on the January 2003 request for accommodation and February 2003 transfer.

### C.      2003 Transfer as "Background Evidence"

Plaintiff argues that, even if her claims for discrimination and retaliation based on the 2003 transfer are barred, the evidence of the 2003 transfer should be permitted as background evidence of discriminatory intent in support of her remaining retaliation and constructive discharge claims.[100] The Court defers ruling on this issue at this time, as it is more appropriately raised in the context of a summary judgment motion on the merits of those claims or, if none is filed, in the context of an *in limine* motion.

### D.      Equitable Relief

Finally, plaintiff asks for equitable relief. She suggests that, having made a good faith

---

[99] *See* 5 U.S.C. § 7121(d) ("Selection of the negotiated grievance procedure in no manner prejudices the right of an aggrieved employee to request the Merit Systems Protection Board to review the *final decision* . . . or, where applicable, to request the Equal Employment Opportunity Commission to review the *final decision* . . .") (emphasis added); *Fernandez v. Chertoff*, 471 F.3d 45, 54 (2d Cir. 2006); *see also* Art. 22 § 22.04 (mentioning appellate rights under 5 U.S.C. § 7121(d)); (Doc. 7, Ex. B-2 & B-4 ) (discussing plaintiff's appellate options).

[100] *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1223 (10th Cir. 2006) (in which the Court held that time-barred acts may be background evidence for timely claims).

effort to "navigate[] the contradictory and confusing morass of laws, regulations and union agreements" intended for her protection, she should be permitted to proceed in this forum on three grounds: (1) that she was not sufficiently counseled on the administrative remedies available to her or the consequences of making an election; (2) that the Agency never informed her that her grievance was ungrievable; and (3) that the Agency investigated her claims, then re-characterized her claims for the purpose of deciding which to adjudicate and which to dismiss. In the alternative, she asks this Court to direct the Agency to arbitrate her claims based on the retaliatory transfer.

Because the exhaustion of administrative remedies is jurisdictional, this Court is without jurisdiction to consider plaintiff's equitable arguments for waiver and estoppel.[101]  Moreover, the Tenth Circuit typically applies equitable tolling in situations involving the timeliness of exhausting administrative remedies as opposed to cases such as this one, where the issue involves whether administrative remedies were exhausted.[102]

Even if the Court were to consider plaintiff's equitable arguments, however, plaintiff cannot meet the high bar set by the Supreme Court and other courts that would allow the application of equitable principles to her failure to exhaust administrative remedies.  Federal courts have extended equitable relief only "sparingly."[103]  Such requests have generally been

---

[101]*Shendock v. Director, Office of Workers' Comp. Programs*, 893 F.2d 1458, 1466 (3d. Cir. 1990) (stating that "[e]quitable tolling or estoppel simply is not available when there are jurisdictional limitations."); *Brown v. Director, OWCP*, 864 F.2d 120, 124 (11th Cir. 1989) (noting that "[j]urisdictional limitations and the policies which they embody must be honored even in the face of an apparent injustice or an administrative agency's obvious misapplication or violation of substantive law.").

[102]*See Farley v. Leavitt*, No. 05-1219, 2007 WL 6364841, at *17 (D. N.M. Dec. 31, 2007); *Sullivan v. Harvey*, No. 06-838, 2007 WL 2828895, at *3 (D. Colo. Sept. 28, 2007); *see also Douglas v. Norton*, 167 F. App'x 698, 711 (10th Cir. Jan. 19, 2006).

[103]*Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1991).

granted only in "particularly egregious circumstances," such as where the employee's reliance

on a statement of a court or agency official caused him to commit errors despite his otherwise

diligent efforts.[104]  Equitable tolling may also be appropriate where the defendant has actively

misled the employee or where the employee has been tricked by the employer's conduct.[105]

"Once the defendant meets its burden of showing that the plaintiff failed to exhaust

administrative remedies, the plaintiff must then prove that his claims should be equitably

tolled."[106]  In this case, as previously discussed in detail, there is no evidence of affirmative

misconduct on the part of defendant, or that her grievance was ungreivable.  Instead, plaintiff

abandoned her internal grievance procedure after obtaining counsel.  Plaintiff's allegations do

not rise to the egregious level that would permit equitable waiver of her duty to exhaust her

administrative remedies.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for

Partial Dismissal of Count I, paragraphs 34-48, and Count II, paragraph 50 and 51a. (Doc. 6) is

GRANTED; plaintiff's claims are dismissed without prejudice, pursuant to Fed. R. Civ. P.

12(b)(1).  Defendant's alternative motion for summary judgment (Doc. 9) is denied as moot.

**IT IS SO ORDERED.**

Dated: March 30, 2010

         S/ Julie A. Robinson
        JULIE A. ROBINSON
        UNITED STATES DISTRICT JUDGE

---

[104]*Sullivan v. Harvey*, No. 06-838, 2007 WL 763211, at *5 (D. Colo. Mar. 9, 2007) (quoting *Brucks v. O'Neill*, 184 F. Supp. 2d 1103, 1111 (D. Kan. 2001)).

[105]*Irwin*, 498 U.S. at 96.

[106]*Sullivan*, 2007 WL 763211, at *6 (quoting *Harms v. Internal Revenue Serv.*, 146 F. Supp. 2d 1128, 1135 (D. Kan. 2001)).